# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DALHIA FAYE REYNOLDS,**

**Plaintiff,**

-vs-                                                    Case No.  6:10-cv-1682-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**
_____

# MEMORANDUM OF DECISION

Dalhia Faye Reynolds (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits.  Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed and remanded for an award of benefits because the Administrative Law Judge (the "ALJ") erred by: 1) failing to state with particularity the weight given and the reasons therefor to the opinions of Claimant's treating physicians, Drs. Rhodes and Carratt; 2)  rejecting their respective opinions without good cause; 3) misrepresenting the record regarding Dr. Rhodes' October 21, 2008 opinion; 4) failing to apply the correct legal standard to Claimant's testimony; and 5) finding that Claimant's medications have been relatively effecting in controlling the [C]laimant's symptoms without substantial evidence to support such a finding.  Doc. No. 18 at 1-22.  For the reasons set forth below, the final decision of the Commissioner is **REVERSED and REMANDED** because the ALJ erred **by failing to state with particularity the weight given,**

and the reasons therefor, to the opinions of Drs. Rhodes and Carratt.  Furthermore, the ALJ failed to demonstrate good cause to reject their opinions.

## I.   BACKGROUND.

Claimant was born on November 19, 1960.  R. 113.  On March 30, 2007, Claimant filed an application for benefits alleging an onset of disability as of May 23, 2007, due to degenerative disc disease, degenerative joint disease in the knees, chronic back and knee pain, scoliosis, and high blood pressure.  R. 113-120.  Claimant's application was denied initially and upon reconsideration.  R. 62-66.

## II.   MEDICAL AND OPINION EVIDENCE.

The medical record contains the following: 1) treatment records, x-ray reports, magnetic resonance imaging ("MRI") reports, and medical opinions from Claimant's treating orthopedic surgeon, Dr. Richard Rhodes (R. 198-256, 276, 279-98, 300-02, 315-322); 2) treatment records and medical opinions from Claimant's treating physician, Dr. James A. Carratt (R. 257-58, 275, 277-78, 311-14, 323-28); 3) treatment records, an x-ray report, and an MRI report from Dr. Michael N. Fulton (R. 330-37); 4) a single consultative examining physician's report from Dr. Carlos Sanchez (R. 259-66); and 5) two residual functional capacity assessments ("RFC") provided by non-examining physicians (R. 267-74, 303-10). The vast majority of the medical records come from Claimant's treating orthopedic surgeon, Dr. Rhodes, and primary treating physician, Dr. Carratt, both of whom opined multiple times that Claimant's impairments prevent her from working.  R. 258, 275, 287-89, 315-16.  Dr. Sanchez, the consultative examining physician, did not offer an opinion regarding Claimant's functional limitations.  R. 259-66.  The non-examining physicians each opined that Claimant can perform sedentary work. R. 267-74,

303-10.   Because the treatment records and opinions of Drs. Rhodes and Carratt are dispositive of this case, the Court will discuss them in detail below, along with the treatment records of Dr. Fulton, the only other treating physician who saw Claimant on multiple occasions.

### A.  Dr. Rhodes.

The record indicates that Claimant has been treated by Dr. Rhodes, an orthopedic specialist, since at least 2000.  R. 216, 289.  On January 28, 2005, x-rays of the left and right knees were unremarkable.  R. 205.  On February 28, 2005, an MRI revealed a broad-based, diffuse disc bulge at L5-S1 with no spinal canal stenosis, but with encroachment on the neural foramina bilaterally.  R. 220.   On November 17, 2006, Claimant presented to Dr. Rhodes complaining of increasing bilateral knee pain.  R. 202.  Claimant reported pain with ambulation. R. 202.  Physical examination revealed a morbidly obese female in no acute distress, but with joint line tenderness in both knees.  R. 202.  X-rays revealed "degenerative changes involving medial joint compartment" and a "slight genu varus."  R. 202.  Dr. Rhodes diagnosed Claimant with bilateral knee osteoarthritis and injected Claimant's knees with Decadron and Lidocaine, and prescribed Mobic.  R. 202.

On September 5, 2007, Claimant reported chronic pain throughout her lower extremities, low back, and knees.  R. 281.  Physical examination showed "waddling and painful gait."  R. 281.  Claimant could not extend her lumbar spine.  R. 281.  Claimant was "tender to palpation along the paravertebral musculature lower lumbar spine . . . with decreased flexion, extension, lateral rotation, [and] lateral bending noted."  R. 281.  Claimant did display a full range of motion in her hips, knees, ankles, feet and toes, but "[b]oth knees were painful over the medial joint surfaces."  R. 281.  Claimant also showed "excellent motion" with her knees.  R. 281.  X-

rays done that day revealed "sever arthritic degeneration [at the] L5-S1," and "quite a bit of narrowing in the medial compartment [of the knees]." R. 281. Dr. Rhodes' impression was lumbar radiculopathy. R. 281. Dr. Rhodes also noted that nothing other than epidural steroid injections had provided Claimant with any relief over the years. R. 281.

A September 7, 2007, MRI revealed degenerative disc disease at the L5-S1, "similar to the prior exam of 2005." R. 284. On September 25, 2007, Claimant returned complaining of "pain everywhere in her body." R. 283. Dr. Rhodes injected both knees with Synvisc and stated that "[t]here is nothing else we can do for her right now except send her to pain management." R. 283. On December 26, 2007, Dr. Rhodes completed an insurance claim form opining that Claimant is unable to work due to her conditions, Claimant will be unable to return to work, and that the disability will last more than twelve month. R. 289.

On September 25, 2008, Dr. Rhodes' notes state that Claimant has "a three-year history of having pain in her back and legs following a motor vehicle accident which occurred January 25, 2005." R. 315. Physical examination showed the following:

> On examination today, she is 5 feet 1 inch, weighs over 235 pounds. She ambulates with a wobbling gait, very antalgic and very slow. She does use canes, she has them in the car today. As far as examination, she sits comfortably but can only sit for about an hour without having to get up, four hours in a day. She states the only work she does is a little bit of housework and it is very painful for her to do anything. She states she has tried dieting and cannot lose weight. Her lumbar spine is tender about the L5-S1 area with decreased flexion, extensions, lateral rotation, lateral bending noted. Full range of motion of her hips, ankles, feet, and toes. When she stands she goes into a genu varus deformity of both knees. Otherwise she has good flexion and extension with pain about both knees, medial and lateral joint margins and behind her right knee and leg. She can stand flat foot but hard to stand on her toes.

> X-rays taken today of the lumbar spine . . . reveal severe osteoarthritic degeneration L5-S1. . . . X-rays of both knees . . . reveal severe osteoarthritic degeneration of the medical compartment with almost bone-on-bone. . . . She has had Synvisc injections before, which really did not help in the right knee. She has had two shots, the right and left knee.

R. 315-16.   As part of his treatment note, Dr. Rhodes offers the following opinion:

> At this point in time, this patient is totally disabled from her knees and her back. As far as the question of whether or not the motor vehicle accident caused this I would say her pain in her knees remain worse by the motor vehicle accident by 50%. I would give her a permanent impairment rating because she has to use canes to help ambulate of 25% for her legs and 55 for her back, or a total of 25% impairment rating. But 100% impairment as far as disability would be considered if she could not function at any level to do any sort of work. This is according to Guides and Evaluation Permanent Impairment Fourth Edition, because of the need for the use of a cane, antalgic gait, and the genu varus instability pattern in her knees. There is nothing else I can really do for her at this point in time. She really needs to get into a weight loss program. . . .

R. 316.   Thus, Dr. Rhodes opines that Claimant is disabled due to her knees and her back. R. 316.   On October 21, 2008, Dr. Rhodes also filled out an insurance claim form opining that due to Claimant's pain in her back and legs, she is unable to return to her past work or to function in light or modified duty work. R. 287.   Accordingly, Dr. Rhodes offered three separate opinions that Claimant is not capable of working due to her degenerative disc disease and degenerative joint disease. R. 287, 289, 316.

**B. Dr. Carratt.**

Dr. Carratt is Claimant's long-term primary care physician. R. 257-58, 275, 277-78, 311-14, 323-29. As early as August of 2006, claimant complained of difficulty walking. R. 325. On May 24, 2007, straight leg raising elicited pain across Claimant's back. R. 258. Claimant complained of pain "all over." R. 323. Dr. Carratt diagnosed Claimant with low back pain with

radiculopathy, degenerative arthritis of the knees and lumbar spine, and hypertension.  R. 258.

On September 13, 2007, Dr. Carratt opined that Claimant suffers from "severe degenerative

arthritis of her lumbar spine and her knees.  These conditions render her incapable of working."

R. 275.   On September 19, 2007, Dr. Carratt completed a function questionnaire, stating:

Claimant has no motor deficits or problems with grip strength, but she has a waddling antalgic

gait and cannot squat, walk on toes, or walk on heels.  R. 278.

On February 4, 2008, Dr. Carratt's treatment notes show that Claimant displayed "very

pronounced" pain in her knees.  R. 257.  Dr. Carratt stated that her back problems may be due in

large part to her abnormal gait, which is caused by her knees.   R. 257-58.   Dr. Carratt

recommended a total knee replacement.   R. 257-58.   His diagnosis remained degenerative

arthritis of the knees and lumbar spine, low back pain with radiculopathy, and hypertension.  R.

257-58.  Claimant's medications were Mobic, Darvocet, Lisinopril, and Cyclobenzaprene.  R.

257-58.  Dr. Carratt's notes state the Claimant was given another note from him opining that

Claimant is disabled due to her knees and back.  R. 258.

On July 3, 2008, Dr. Carratt's notes state that the pain medication is not working and

Claimant continues to have a lot of pain in her knees, legs, and lower back.  R. 311.  Claimant's

diagnosis remained unchanged.   Dr. Carratt's notes also state that Dr. Rhodes had provided

Claimant with two injections into her knees, which provided relief for 20 to 30 days, but then the

pain returned.  R. 311.

On July 14, 2009, Dr. Carratt's treatment notes reflect that Claimant is still experiencing

lots of pain.  R. 326-28.  X-rays confirmed that Claimant continues to have degenerative disc

disease of the L5-S1.  R. 328.  Dr. Carratt's notes also state that Claimant's insurance ran out and

Dr. Rhodes has not been paid, so he will no longer treat Claimant.  R. 326-27.   On December 24,

2009, Dr. Carratt's notes continue to reflect that Claimant is suffering from "intolerable pain."

R. 329.

### C.  Dr. Fulton.

 On August 25, 2009, Claimant began treating with Dr. Michael N. Fulton, M.D., after an

August 3, 2009 motor vehicle accident.  R. 335.  Claimant described her current pain as a 10 on a

scale of 1 to 10.  R. 335.  Physical examination revealed that Claimant "has a definite antalgic

gait," and she uses a cane to assist with ambulation.  R. 336.   Standing gives her "some

difficulty."   R. 336.    Cervical spine is restricted with all range of motion.  R. 336.

Neurologically, Claimant is intact.  R. 336.  X-rays showed "remarkable narrowing of the L5-S1

disc space. . . . This level is mostly bone-on-bone."  R. 336.  Dr. Fulton diagnosed Claimant with

advanced degenerative disc disease of the lumbar spine, neck pain, and low back pain.  R. 336.

On October 15, 2009, Dr. Fulton's notes show that Claimant has early degenerative

changes in the cervical spine at C4-C5.  R. 332.  Claimant does not respond to "conservative

modality work," or medications.  R. 332.  An MRI showed that no "significant neurological

encroachment" at the L5-S1.  R. 332.  "The cervical spine demonstrates a remarkable reduction

of cervical lordosis with very early disc bulging at C4-5," but no evidence of neurological

encroachment.  R. 332.  Dr. Fulton diagnosed Claimant with degenerative disc disease of both

the lumbar and cervical spine.  R. 332. Dr. Fulton opined that Claimant is not a candidate for

rehabilitation.  R. 332.

On January 4, 2010, Dr. Fulton's notes state that Claimant's "clinical course at the

moment is that of worsening of symptoms particularly with back and leg pain."  R. 330.

Physical examination showed a "slow deliberate cane assisted gait." R. 330. Flexion and extension cause discomfort. R. 330. "Straight leg raises causes apprehension," but Dr. Fulton was "not certain that there is true sciatic irrigation demonstrated." R. 330. Cervical spine was remarkably restricted in all planes, and shoulder range of motion was also restricted. R. 330. Dr. Fulton again opined that Claimant is not a candidate for rehabilitation and that surgery was not an option. R. 330-31.

## III.   <u>ADMINISTRATIVE PROCEEDINGS</u>.

On February 25, 2010, a hearing was held before the ALJ. R. 25-61. Claimant and the vocational expert were the only persons to testify at the hearing. R. 25-61. Claimant testified that she did some babysitting work in 2009 for six months, but she could not continue doing that work because of her back and knees. R. 36. Claimant stated that she would not be able to perform sedentary work because she cannot sit for long periods of time and is in constant pain. R. 37. Claimant stated she can sit for thirty minutes before having to stand up, but she can only stand for ten minutes. R. 37. Claimant testified that she does not prepare meals, she cannot dress herself every day, she sometimes requires help bathing, she cannot sweep or mop, she sometimes does the dishes, but she does not do the laundry. R. 39-41. Claimant testified that when she grocery shops, she "rides the scooter and [she has a friend] lift it for [her]." R. 42. Claimant stated that she is currently taking Mobic, Darvocet, Oxybutynin, and Tylenol. R. 43, 48. Claimant reported that her medications do not really provide her with relief and she is in constant pain every single day. R. 48-49.

On March 5, 2010, the ALJ issued a decision finding Claimant not disabled. R. 11-20. At step-two, the ALJ found that Claimant has the following severe impairments: degenerative

disc disease at L5-S1, degenerative disc disease at C4-5, and degenerative arthritis of the knees. R. 13.  The ALJ found that the Claimant retains the RFC to perform sedentary work except that Claimant must be allowed to stand up and stretch at the job site and must avoid stairs, ladders, scaffolds, and heights.  R. 14.  In determining Claimant's RFC, the ALJ states the following as to the opinion evidence:

> I have considered the opinion of Dr. Rhodes and give it appropriate weight.  I note that Dr. Rhodes has a treatment history with the [C]laimant; however, his opinion is inconsistent with the evidence of record when considered in its entirety including statements/testimony for the [C]laimant regarding activities of daily living.  Furthermore, Dr. Rhodes' own treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the [C]laimant were in fact disabled and the doctor did not specifically address this weakness. I also note that Dr. Rhodes did not see the [C]laimant between September 2007 and September 2008 and that the [C]laimant has not seen Dr. Rhodes at all since September of 2008.

R. 18.  Thus, the ALJ states that she gave Dr. Rhodes opinion "appropriate weight."  R. 18.  The ALJ gave the following reasons for assigning the opinion "appropriate weight": 1) the opinion is inconsistent with the evidence of record when considered in its entirety and with Claimant's testimony regarding her activities of daily living; 2) Dr. Rhodes treatment records fail to contain significant clinical and laboratory findings, and the doctor did not address the absence of those findings in his opinion; and 3) Dr. Rhodes did not treat the Claimant between September 2007 and September 2008, and the record does not contain further treatment records from him.  R. 18.

In his decision, the ALJ also makes the following statement regarding Dr. Rhodes' December 26, 2007 opinion that Claimant is unable to work due to her impairments: "He opined that the [C]laimant was not able to return to modified duty.  Of note is that the form has a block to check if the alleged disability is such that you could apply to social security for disability.  The

doctor checks 'no.'" R. 16.[1]

As to Dr. Carratt's opinions, the ALJ states the following:

> I have considered the opinion of Dr. Carratt and give it appropriate
> weight.  I note that Dr. Carratt has a treatment history with the
> [C]laimant; however his opinion is inconsistent with the evidence
> of record when considered in its entirety including
> statements/testimony from the [C]laimant regarding activities of
> daily living.  Furthermore, Dr. Carratt's own treatment records fail
> to reveal the type of significant clinical and laboratory
> abnormalities one would expect if the [C]laimant were in fact
> disabled and the doctor did not specifically address this weakness.

R. 18.  Thus, ALJ makes nearly identical findings regarding Drs. Rhodes and Carratt's opinions.

The ALJ states that she gave Dr. Carratt's opinion "appropriate weight."  R. 18.  The ALJ gave

the following reasons for assigning the opinion "appropriate weight": 1) the opinion is

inconsistent with the evidence of record when considered in its entirety and with Claimant's

testimony regarding her activities of daily living; and 2) Dr. Carratt's treatment records fail to

contain significant clinical and laboratory findings, and the doctor did not address the absence of

those findings in his opinion.  R. 18.

The ALJ gave the opinions of the non-examining physicians, who opined Claimant could

perform sedentary work, "some weight."  R. 18.  The ALJ states:

> [T]he RFC conclusions reached by the physicians employed by the
> State Disability Determination Services also support a finding of
> 'not disabled.'  Although those physicians were non-examining,
> and therefore their opinions do not as a general matter deserve as
> much weight as those of examining or treating physicians, those
> opinions do deserve some weight, particularly in a case like this in
> which there exist a number of other reasons to reach similar
> conclusions.  These physicians concluded that the [C]laimant could
> perform work at the sedentary level of exertion.  Accordingly, I

---

[1]A review of the opinion (R. 288-89) reveals no such block to check and no such statement by Dr. Rhodes.  The ALJ does not mention Dr. Rhodes' October 21, 2008 opinion in her decision.  R. 14-18.

> find that the [C]laimant's allegations of disability are far in excess
> of the medical evidence of record.

R. 18.   Thus, although the ALJ states that the non-examining opinions were given only "some weight," because the ALJ adopted their opinions rather than the opinions of Drs. Rhodes and Carratt, which are the only other opinions in the record, it is clear that ALJ actually gave the non-examining opinions controlling weight.   R. 18.   Accordingly, the ALJ found Claimant not disabled. R. 20.

On September 17, 2010, the Appeals Council denied Claimant's request for review.  R. 1-5.  On November 12, 2010, Claimant appealed the Commissioner's final decision to the District Court.  The appeal is ripe for review.

## IV.    THE ISSUES.

As set forth above, Claimant raises numerous issues on appeal.  *See* Doc. No. 18 at 1-18. However, the Court finds that the first three issues raised by Claimant, regarding the ALJ's consideration of the treating physicians' opinions, are dispositive of the case.  First, Claimant maintains that the ALJ erred by failing to state with particularity the weight given to Drs. Rhodes and Carratt's opinions and the reasons therefor.  Doc. No. 18 at 14.  By only stating that she gave "appropriate weight" to those opinions, Claimant maintains that the ALJ has not sufficiently explained the weight given to those opinions and the reasons therefor.  Doc. No. 18 at 14-15. Claimant asserts that this error constitutes reversible error.  Doc. No. 18 at 14 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Second, Claimant recognizes that the ALJ did not adopt the opinions offered by Drs. Rhodes and Carratt, because the ALJ did not incorporate them into her decision, and relied instead on the opinions of the non-examining physicians.  Doc. No. 18 at 15-17.  Claimant

asserts that was error because the ALJ failed to demonstrate good cause to reject the opinions of Claimant's treating physicians. *Id*. Claimant contends that the ALJ's statement that the opinions were "inconsistent with the evidence of record when considered in its entirety including statements/testimony from the [C]laimant regarding activities of daily living," is not sufficient. Doc. No. 18 at 16. Claimant argues that the ALJ was required to demonstrate how the opinions were inconsistent with record. *Id*. Claimant also asserts that Claimant's testimony regarding her activities of daily living was entirely consistent with the opinions. *Id*. Claimant further maintains that the ALJ's finding that the opinions "fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the [C]laimant were in fact disabled and the doctor did not address weakness," is not supported by the record. Doc. No. 18 at 17.

Third, Claimant argues that the ALJ misstated the record regarding Dr. Rhodes' December 26, 2007, opinion. Doc. No. 18 at 17. Claimant asserts that contrary to the ALJ's finding, there is no checked box in the opinion indicating that the opinion does not apply to Social Security Disability. Doc. No. 18 at 17. Claimant maintains that these errors are not harmless and that the opinions of Drs. Rhodes and Carratt must be accepted as true as a matter of law. Doc. No. 18 at 22 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Thus, because the opinions must be accepted as true, Claimant asserts that the record demonstrates that she is disabled and the case should be remanded for an award of benefits. Doc. No. 18 at 22-23.

The Commissioner asserts that the ALJ properly considered the opinions of Drs. Rhodes and Carratt, and that the final decision should be affirmed. Doc. No. 22 at 4, 14-15. The Commissioner does not address whether the ALJ failed to state with particularity the weight

given to their opinions by simply stating that the ALJ gave them "appropriate weight." Doc. No. 22 at 1-15. Instead, the Commissioner implicitly accepts that the ALJ gave the opinions "little weight." Doc. No. 22 at 4-5. The Commissioner states that an ALJ may give little weight to a treating physician's opinion when the ALJ "articulates legitimate reasons for doing so." Doc. No. 22 at 5. In this case, the Commissioner contends that the ALJ articulated legitimate reasons for giving the opinions little weight by stating "that they were not supported by or consistent with the evidence of record." Doc. No. 22 at 5.

Regarding Dr. Carratt's September 13, 2007 opinion (R. 275), the Commissioner contends that it: 1) is not a medical opinion; 2) contains "no underlying basis and [is] wholly without supporting documentation, [therefore] the ALJ properly declined to give it much weight." Doc. No. 22 at 5-6. The Commissioner also maintains that Dr. Carratt's treatment records are inconsistent with the September 13, 2007 opinion because: 1) his treatment records contain no restrictions or limitations; 2) he regularly recommended that Claimant lose weight and undergo a total knee replacement; and 3) he never ordered any tests, such as x-rays and MRI's. Doc. No. 22 at 11.

Regarding Dr. Rhodes' September 25, 2008 opinion (R. 315-16), the Commissioner maintains that it: 1) is not a medical opinion; and 2) is inconsistent or not supported by his treatment records. Doc. No. 22 at 8. The Commissioner asserts that the opinion is inconsistent because it states that Claimant requires the use of a cane for ambulation, but the treatment note on that day stated that Claimant was not using a cane. Doc. No. 22 at 8. The Commissioner also contends that "Dr. Rhodes' treatment records do not reflect the extreme restrictions contained in his [September 25, 2008 opinion]." Doc. No. 22 at 8. The Commissioner argues that Claimant

-13-

has received nothing but conservative care, and Dr. Rhodes' records "do not suggest that Plaintiff is disabled by her impairments." Doc. No. 22 at 9.

The Commissioner also argues that other evidence also supports the ALJ's decision, including that: 1) Dr. Fulton never imposed any restrictions or limitations on Claimant; 2) Dr. Sanchez did not offer an opinion regarding any restrictions or limitations; 3) the September 2007 MRI was consistent with 2005 MRI; and 4) the 2009 MRI showed no significant neurological encroachment. Doc. No. 22 at 9-10. For all of the above reasons, the Commissioner maintains that the ALJ "properly gave little weight to their [opinions]." Doc. No. 22 at 11.[2] In the alternative, the Commissioner contends that the proper remedy is a remand for further consideration because it is the Commissioner's duty to weigh the evidence and resolve any conflicts therein. Doc. No. 22 at 14.

## V.   LEGAL STANDARDS.

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At

---

[2] The Commissioner does not address Dr. Carratt's September 19, 2007 opinion (R. 278), Dr. Rhodes' December 26, 2007 opinion (R. 288-89), or his October 21, 2008 opinion (R. 287), and the ALJ's treatment of the same. Doc. No. 22 at 1-15. Moreover, the Commissioner fails to address Claimant's arguments that: 1) the ALJ failed to give explicit reasons for giving less than controlling weight to opinions; and 2) the ALJ misrepresents Dr. Rhodes December 26, 2007 opinion. Doc. No. 22 at 1-15.

-14-

step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## B.     THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560;

-15-

*accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C.     REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

 This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it

is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).   A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences.  *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[3]

## VI.   ANALYSIS.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that

---

[3] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).   After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion <u>requiring the ALJ to state with particularity the weight given to it and the reasons therefor</u>. *Id.* (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

In *Winschel*, the Commissioner argued that the ALJ did not err by failing to state the weight he gave to a treating physician's treatment notes and the reasons therefor because they did not constitute an "opinion." *Id.* at 1178-79. The Eleventh Circuit disagreed because the treatment notes contained "a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions.'" *Id.* (quoting 20 CFR §§ 404.1527(a)(2), 416.927(a)(2)). Thus, the treating physician's treatment notes constituted an

-18-

opinion.  *Id*.   The Eleventh Circuit noted that the ALJ only referenced the treating physician once and did not state the weight given to the treating physician's opinion.  *Id*.   The Eleventh Circuit reversed stating that "[i]t is possible that the ALJ considered and rejected these . . . medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Id*. (emphasis added).

### A.  Particularity.

In this case, the ALJ states that she gave Dr. Rhodes and Carratt's respective opinions "appropriate weight."  R. 18.   The Claimant maintains that the ALJ's statement that the opinions were given "appropriate weight" is an error of law because the ALJ is required to state <u>with particularity the weight that was given and the reasons therefor</u>.  Doc. No. 18 at 14-15.   The Commissioner's memorandum is silent as to this point, but the Commissioner does assert that the opinions are not medical opinions and, therefore, the ALJ was not required to weigh them.  Doc. No. 22 at 5-6.  The opinions offered by Drs. Rhodes (R. 315-16) and Carratt (258, 275, and 278) unquestionably reflect judgments about Claimant's impairments, her diagnosis, and her prognosis vis-à-vis her ability to work.   Thus, they are medical opinions which the ALJ was required to state with particularity the weight given to and the reasons therefor.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

In *Varner v. Astrue*, Case No. 3:09-cv-1026-J-TEM, 2011 WL 1196422 at * 11 (M.D. Fla. Mar. 29, 2011), the ALJ stated that he gave the opinion evidence from two physicians "appropriate weight."  *Id*.   The Court found that "[t]he word 'appropriate' is not particular, as it means suitable or fitting."  *Id*. (internal citations omitted).  Thus, the Court found that ALJ erred

by failing to state with particularity the weight that was given to the opinions. *Id*. The Court agrees entirely with the reasoning in *Varner*, and finds that the ALJ's statement that the opinions were given appropriate weight is essentially meaningless because it places the Court in the position of having to infer what weight the ALJ assigned to the opinions. Thus, the Court finds that the ALJ erred by failing to state with particularity the weight which was given to the opinions of Drs. Rhodes and Carratt. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). This error alone warrants reversal. *Id*.

### B. Good Cause.

Claimant maintains that the reasons given by the ALJ for affording the opinions of the non-examining physicians greater weight than the opinions of the treating physicians are insufficient and not supported by substantial evidence. Doc. No. 18 at 15-17. The Commissioner does not directly address the reasons provided by the ALJ, but offers his own reasons for why good cause exists for rejecting Dr. Rhodes and Carratt's opinions. Doc. No. 22 at 4-11.[4] The Court will address the Commissioner's post-hoc rationalization arguments in a separate section below.

Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

---

[4] The Eleventh Circuit has recently reiterated that "a court may not accept appellate counsel's *post hoc* rationalizations for agency actions," and "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Commissioner of Social Security*, 2010 WL 2511385 at *3 (11th Cir. June 23, 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974) (emphasis in original)). Thus, the Court must rely on the ALJ's consideration and analysis of the opinion evidence, and the Commissioner may not assert his own reasons for the ALJ's action, whether or not the same is supported by some evidence in the record. In this case, the Commissioner fails to address many of the specific arguments raised by Claimant and mainly offers his own reasons to uphold the ALJ's decision to give "little weight" to the opinions of Drs. Rhodes and Carratt, which is itself a restatement of the ALJ's decision because she afforded those opinions "appropriate weight." Doc. No. 22 at 4-11. Other than arguing the untenable positions that the particularity standard only requires an ALJ to generically represent that the opinion was given "appropriate weight" and is not supported by and/or consistent with the evidence of record, the Commissioner relies on impermissible post-hoc rationalization to support the ALJ's decision. *Id*. at 5-11. All such arguments are summarily rejected.

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).[5]   "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician."   *Johnson,* 138 Fed.Appx. at 269.   Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone.  *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of a treating or examining physician.  *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  Moreover, conclusory statements by an ALJ to the effect that an opinion is inconsistent with or not bolstered by the medical record are insufficient to show an ALJ's decision is supported by substantial evidence unless the ALJ articulates factual support for such a conclusion. *See Poplardo v. Astrue*, 2008 WL 68593, *11 (M.D. Fla. Jan. 4, 2008) (failure to specifically articulate evidence contrary to treating doctor's opinion requires remand); *see also Paltan v. Comm'r of Social Sec.*, 2008 WL 1848342, *5 (M.D. Fla. April 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

The ALJ's stated reasons for giving less weight to the opinions of Drs. Rhodes and Carratt than to the opinions of the non-examining physicians are that they are: 1) inconsistent

---

[5] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

with the evidence of record when considered in its entirety and with Claimant's testimony regarding activities of daily living; and 2) their records do not contain significant clinical or laboratory findings, and their opinions do not address the absence of those findings. R. 18. First, the statement that the opinions are inconsistent with evidence of record when considered in its entirety is insufficient to show that the decision is supported by substantial evidence. *See Poplardo*, 2008 WL 68593 at *11 (failure to specifically articulate evidence contrary to doctor's opinion requires remand); *Paltan*, 2008 WL 1848342 at *5 (failure to explain how opinion was inconsistent with medical evidence requires remand).

Second, the statement that their opinions are inconsistent with Claimant's testimony regarding her activities of daily living is not supported by the evidence.  As set forth above, Claimant testified to severely restricted activities of daily living.  R. 36-37, 39-43, 48-49.  The ALJ fails to explain what activities of daily living Claimant testified to that conflict with the opinions of Dr. Rhodes and Carratt.  Moreover, a claimant's testimony that she can do some housework, light cooking, and light grocery shopping are minimal activities of daily living and do not constitute good cause to reject a medical opinion. *Venette v. Apfel*, 14 F.Supp.2d 1307, 1314 (S.D. Fla. 1998).  Thus, the ALJ's statement that the opinions are inconsistent with Claimant's activities of daily living is not supported by substantial evidence and, even if it were, taken alone, is not good cause to reject the opinions.

Third, the ALJ's statement that the doctors' opinions "fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the [C]laimant were in fact disabled" is conclusory and unclear.  The medical records in this case, except Dr. Fulton's treatment records in late 2009 and early 2010, and the Dr. Sanchez's one-time consultative examination, consist

entirely of the treatment records of Drs. Rhodes and Carratt.  R. 198-256, 257-58, 275, 276, 277-78, 279-85, 286-98, 311-14, 315-20, 321-22, 323-29.  Both doctors repeatedly discussed multiple x-ray and MRI findings, which confirmed their diagnoses and formed the basis of their opinions.  *Id*.  The ALJ fails to explain how the x-rays and MRIs ordered by these doctors contradict their opinions or what other "clinical and laboratory abnormalities" she would expect to find.[6]  Thus, the Court finds that this reason is not supported by substantial evidence.

The ALJ also gives less weight to Dr. Rhodes' opinions because he did not treat Claimant between September 2007 and September 2008, no longer treats Claimant, and because his December 26, 2007 opinion contains a checked box indicating that the Claimant's impairments are not so severe that she could apply for Social Security Disability.  R. 16, 18.  As to Claimant's lapse in treatment with Dr. Rhodes, the implication is that Claimant's symptoms were not so severe that she required regular treatment.  However, that implication is negated by Dr. Carratt's July 14, 2009, treatment note which provides that Dr. Rhodes will no longer treat Claimant because her insurance ran out and did not pay his last bill.  R. 326-27.  Furthermore, as set forth above, Dr. Rhodes' December 26, 2007 opinion does not contain any checked box indicating that Claimant's impairments are not so severe that she could apply of Social Security Disability.  R. 288-89.  Thus, the ALJ's additional reasons for giving less weight to Dr. Rhodes' opinions are not supported by substantial evidence.

## VI.    REMEDIES.

The Claimant requests a reversal for an award of benefits because the record demonstrates that Claimant is disabled.  Doc. No. 18 at 22.  The Commissioner maintains that

---

[6] Dr. Rhodes specifically noted that x-rays revealed severe degeneration at L5-S1 and in both knees with nearly bone-on-bone contact in the knees.  R. 315-16.

the proper remedy is a remand for further consideration because it is the Commissioner's duty to weigh the evidence and to resolve conflicts in that evidence.  Doc. No. 22 at 14.  The Court is mindful that it "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Without engaging in prohibited reweighing, the Court cannot determine whether the cumulative effect of the evidence establishes disability beyond a doubt.  *Id*.; *see also Davis*, 985 F.2d at 534. Therefore, the Court finds that the appropriate remedy is to remand the case to Commissioner for further proceedings consistent with this decision.[7]

**VI.**     **CONCLUSION.**[8]

For the reasons stated above, it is **ORDERED** that:

1.   The final decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of Section 405(g) for further proceedings;

2.   The Clerk is directed to enter judgment in favor of Claimant and to close the case.

**DONE and ORDERED** in Orlando, Florida on March 2, 2012.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson

---

[7] The Commissioner is cautioned that an injustice may result if, on remand, the Commissioner is unable to comply with straightforward legal duties, such as stating with particularity the weight that was given to the opinion evidence of record and the reasons therefore.  *See Walden*, 672 F.2d at 840 (a claimant may be entitled to an award of benefits where she has suffered an injustice).

[8] It is unnecessary to address the other issues raised by Claimant.

3200 Corrine Drive, Suite E
Orlando, Florida 32803


John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Teresa J. Davenport
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224